UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SEVEN SPRINGS LIMITED
PARTNERSHIP, a Missouri
limited partnership,

        NO. CIV. S-07-142 LKK/GGH

        Plaintiff,

   v.

        O R D E R

FOX CAPITAL MANAGEMENT
CORPORATION, a California
corporation,

        Defendant.

_____/

Plaintiff Seven Springs has brought an action for past and future response costs related to contamination at a shopping center in South Lake Tahoe, California. Plaintiff contends that defendant Fox, as the former partner of a prior owner to the site, is liable pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"), and pursuant to an indemnity agreement. Pending before the court is defendant's motion to dismiss. Defendant argues that (1) plaintiff has failed to plead sufficient facts to support its innocent land owner defense, (2) plaintiff cannot

1

1  maintain a claim for contribution under CERCLA, and (3) plaintiff

2  is not entitled to indemnity under the terms of the agreement.

3  The court resolve the matter upon the parties' papers and after

4  oral argument.  For the reasons set forth below, the motion to

5  dismiss is granted in part and denied in part.

## I. Background

7      Plaintiff Seven Springs owns the South Y Shopping Center in

8  South Lake Tahoe, California, which is site of alleged

9  perchloroethylene (PCE) contamination.  Plaintiff has brought four

10  claims in the present action: (1) cost recovery under CERCLA

11  Section 107, (2) contribution under CERCLA Section 107 (in the

12  alternative), (3) declaratory judgment, and (4) express

13  contractual indemnity.

14      Defendant Fox was the general partner of the now defunct

15  Century Properties Equity Fund 73 ("Century 73"), which owned the

16  site from 1974 to 1985.  Compl. ¶ 18.  During this period,

17  plaintiff alleges that hazardous substances were disposed of at

18  the site, causing the contamination at issue in this lawsuit.

19  Specifically, plaintiff alleges that PCE was released to the soil

20  and potentially the groundwater through cracks and holes in the

21  sidewalk, parking lot, and/or driveway during delivery of PCE (a

22  cleaning solvent) to a coin-operated dry-cleaning unit.  Compl. ¶¶

23  14, 17.

24      Plaintiff alleges that Century 73 sold the site in 1985 to

25  Dorothy Lyddon.  Compl. ¶ 24.  At the time, Century 73 entered

26  into an agreement with Lyddon to indemnify her for losses with

1   respect to any breaches by Century 73 of its obligations as

2   landlord, including an alleged duty to maintain the sidewalks of

3   the premises.  Compl. ¶ 30.  In 1996, Lyddon transferred ownership

4   of the site to plaintiff Seven Springs; at the time, she owned

5   100% of Seven Springs' limited partner interest and 70.01% of its

6   1% general partner interest.  Compl. ¶ 32-35.

## II. Standard

8       On a motion to dismiss, the allegations of the complaint must

9   be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

10  The court is bound to give the plaintiff the benefit of every

11  reasonable inference to be drawn from the "well-pleaded"

12  allegations of the complaint.  See Retail Clerks Intern. Ass'n,

13  Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

14  Thus, the plaintiff need not necessarily plead a particular fact

15  if that fact is a reasonable inference from facts properly

16  alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648

17  (1963) (inferring fact from allegations of complaint).

18      In general, the complaint is construed favorably to the

19  pleader.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  So

20  construed, the court may not dismiss the complaint for failure to

21  state a claim unless it appears beyond doubt that the plaintiff

22  can prove no set of facts in support of the claim which would

23  entitle him or her to relief.  See Hishon v. King & Spalding, 467

24  U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46

25  (1957)).  In spite of the deference the court is bound to pay to

26  the plaintiff's allegations, however, it is not proper for the

1  court to assume that "the [plaintiff] can prove facts which [he or

2  she] has not alleged, or that the defendants have violated the .

3  . . laws in ways that have not been alleged." Associated General

4  Contractors of California, Inc. v. California State Council of

5  Carpenters, 459 U.S. 519, 526 (1983).

### III. Analysis

**A. Cost Recovery under CERCLA Section 107**

8  First, defendant argues that plaintiff has failed to plead

9  a defense to liability, which is a prerequisite to bringing a

10  Section 107 cost recovery action against other potentially

11  responsible parties ("PRPs") under CERCLA.  The innocent land

12  owner defense requires, among other things, that the defendant

13  lack knowledge of the hazardous substance at the time of

14  acquisition, carry out all appropriate inquiries regarding

15  previous ownership, and exercise due care with respect to the

16  hazardous substances.  See 42 U.S.C. §§ 9607(b), 9601(35)(A)-(C)

17  (requiring total of seven elements).  Plaintiff alleges that it

18  is entitled to the innocent landowner defense based on two

19  theories: that Lyddon qualified for the defense when she

20  acquired the site and that Seven Springs independently satisfies

21  the requirements.  The first theory is untenable as a matter of

22  the law, and the second theory has not been sufficiently pled.

23  With regard to the first theory, even if Lyddon could

24  establish that she was entitled to the defense, that would be of

25  little assistance to Seven Springs.  Simply put, Lyddon is not

26  Seven Springs.  Although Lyddon may own over 99% of the interest

4

1  in Seven Springs, the two are still separate legal entities,

2  with separate rights and responsibilities.  See Cal. Corp. Code

3  § 16201 ("[a] partnership is an entity distinct from its

4  partners."); Chesapeake and Potomac Telephone Co. v. Peck Iron &

5  Metal Co., Inc., 814 F. Supp. 1269, 1280-81 (E.D. Va. 1992)

6  (analyzing availability of innocent landowner defense separately

7  for partnership and general partners).

8      Moreover, to allow a subsequent owner to shelter under the

9  defense of a former owner would defeat the purpose of the

10  defense.  For instance, Seven Springs would be able to claim the

11  defense even if it performed no inquiry at all into existing

12  environmental conditions at the time that it acquired the site.

13  Accordingly, to the extent that plaintiff relies on the conduct

14  of "Seven Springs, through Ms. Lyddon," Compl. ¶¶ 50-54, this

15  fails to state a claim as a matter of law.

16      With regard to the second theory, Seven Springs has not

17  sufficiently pled that it independently satisfies the elements

18  of the innocent landowner's defense.  The complaint contains

19  allegations pertaining to only a subset of the required elements

20  of the defense, such as whether defendant took reasonable steps

21  to stop any continuing release.  See Compl. ¶ 55; M&M Realty Co.

22  v. Eberton Terminal Corp., 977 F. Supp. 683, 687 (M.D. Pa. 1997)

23  (finding that plaintiff had not adequately pled all elements of

24  the innocent landowner defense).  Nevertheless, because the

25  defects are easily cured, the court grants the motion to dismiss

26

1  with respect to plaintiff's first claim, with leave to amend.[1]

2  **B. Contribution under Section 107**

3      Second, defendant argues that plaintiff cannot maintain a

4  contribution action under Section 107 because it cannot meet the

5  requirements set forth in Section 113, which defendant maintains

6  is a prerequisite to any claim for contribution.  Plaintiff

7  concedes that, at present, it may not satisfy the requirements

8  of Section 113, which permits a contribution action only where

9  the plaintiff has first been sued under CERCLA, or has entered

10 into a qualifying settlement.[2]  Accordingly, the only issue is

11 whether a plaintiff may proceed with a contribution action under

12 Section 107, when it has not satisfied the requirements of

13 Section 113.[3]

14

---

15     [1]  The  draft  amended  complaint  attached  to  plaintiff's
   opposition  appears  to  have  cured  the  defects  in  the  original
16 complaint.    Despite  defendant's  assertions  to  the  contrary,
   plaintiff need not plead more than this. Rule 8 only requires that
17 the pleader provide a short and plain statement of the grounds for
   relief.

18

   [2] Section 113 permits "any person [to] seek contribution from
19 any other person who is liable or potentially liable . . . during
   or following any civil action under [Sections 106 or 107(a)].  42
20 U.S.C. § 9613(f)(1).  It also provides that "[a] person who has
   resolved its liability to the United States or a State for some or
21 all of a response action . . . in an . .. approved settlement may
   seek  contribution  from  any  person  who  is  not  party  to  a
22 settlement."  42 U.S.C. § 9613(f)(3)(B).

23     [3] Section 107 of CERCLA provides that a PRP "shall be liable
   to (A) all costs of removal or remedial action incurred by the
24 United  States  Government  or  a  State  of  an  Indian  tribe  not
   inconsistent  with  the  national  contingency  plan;  (and)  (B)  any
25 other necessary costs of response incurred by any other person
   consistent  with  the  national  contingency  plan."  42 U.S.C. §
26 9607(a).

1    The state of the law on this issue is in flux, and is the

2  subject of pending appeals before the Ninth Circuit, as well as

3  the Supreme Court.  See City of Rialto v. U.S. Dep't of Defense,

4  No. 05-56749 (9th Cir. Nov. 5, 2005); Koutros v. Gross-Jewett

5  Co., No. 05-80120 (9th Cir. Oct. 21, 2005); Atlantic Research

6  Corp. v. United States, 459 F.3d 827 (8th Cir. 2006), cert.

7  granted, 127 S. Ct. 1144 (Jan. 19, 2007) (No. 06-562).

8  Nevertheless, three of the four circuit courts to have

9  considered the issue -- the Second, Seventh, and Eighth Circuits

10  -- have found that there is an independent action under Section

11  107.  Compare Atlantic Research, 459. F.3d at 827, Metropolitan

12  Water Reclamation Dist. of Greater Chicago v. North American

13  Galvanizing & Coatings, Inc., 473 F.3d 824 (7th Cir. 2007), and

14  Schaefer v. Town of Victor, 457 F.3d 188, 198-202 (2d Cir.

15  2006), with E.I. Dupont de Nemours & Co. v. United States, 460

16  F.3d 515 (3d Cir. 2006).

17    Similarly, the majority of district courts, including three

18  courts within this district, have also found that plaintiffs may

19  proceed under Section 107 without first satisfying the

20  requirements of Section 113.  See Adobe Lumber, Inc. v. Taecker,

21  2005 U.S. Dist. LEXIS 15374 (E.D. Cal. May 24, 2005); Kotrous v.

22  Goss-Jewett Co. of N. Cal., 2005 U.S. Dist. LEXIS 18013 (E.D.

23  Cal. June 16, 2005); Adobe Lumber v. Hellman, 415 F. Supp. 2d

24  1070 (E.D. Cal. 2006).  But see City of Rialto v. United States

25  Dep't of Defense, 2005 U.S. Dist. LEXIS 26941 (C.D. Cal. Aug.

26  16, 2005); AMCAL Multi-Housing, Inc. v. Pacific Clay Prods., 457

7

1 F. Supp. 2d 1016 (C.D. Cal. 2006).

2      In 1986, the Superfund Amendments and Authorization Act

3 amended CERCLA to include an express right to contribution under

4 Section 113(f).  Previously, several courts had found that PRPs

5 could recover their costs under Section 107.  <u>See</u>, <u>e.g.</u>, <u>Key</u>

6 <u>Tronic Corp. v. United States</u>, 511 U.S. 809, 816 n.7 (1994)

7 (collecting cases).  In 2004, however, the Supreme Court held

8 that PRPs who voluntarily cleaned up contaminated property could

9 not use Section 113(f) to seek contribution from other PRPs

10 without either having first been sued under CERCLA or having

11 entered into a qualifying settlement.  <u>See</u> <u>Cooper Indus., Inc.</u>

12 <u>v. Aviall Servs., Inc.</u>, 543 U.S. 157, 165-68 (2004).

13 Nevertheless, <u>Cooper Industries</u> left open the issue of whether a

14 PRP may sue another PRP under Section 107 (for joint and several

15 liability or otherwise), or whether an implied right of

16 contribution survived the 1986 amendments.  <u>Id.</u> at 169-71.

17      The court finds that PRPs may independently pursue

18 contribution under Section 107.  First, and most importantly,

19 Section 107's plain language commands such a result.  It

20 provides that a PRP "shall be liable for . . . any other

21 necessary costs of response incurred by any other person."  42

22 U.S.C. § 9607(a).  The statute does not read: "by any other

23 person with the exception of a potentially responsible party."

24 Rather, the term "person" is defined broadly under CERCLA.  42

25 U.S.C. § 9601(21).

26      Furthermore, in <u>Key Tronic</u>, the Supreme Court characterized

8

1  the 1986 amendments as "appear[ing] to endorse the judicial

2  decisions recognizing a cause of action under § 107 by

3  presupposing that such a cause of action existed."  511 U.S. at

4  816.  The Court went on to state that CERCLA "now expressly

5  authorizes a cause of action for contribution in § 113 and

6  impliedly authorizes a similar and somewhat overlapping remedy

7  in § 107."⁴  Id.

8      Defendant responds that reading Section 107 to permit

9  contribution actions would nullify or render redundant Section

10  113.  The savings clause in Section 113(f)(1), however,

11  expressly preserves any preexisting state and federal causes of

12  action for contribution.  Because courts prior to the 1986

13  amendments had held that PRPs could pursue contribution from

14  other PRPs under Section 107, those holdings were left intact by

15  the savings clause.

16      The relevant Ninth Circuit cases are not to the contrary.

17  First, defendant cites Pinal Creek for the proposition that "a

18  claim asserted by a PRP under § 107 requires the application of

19  § 113."  Pinal Creek v. Newmont Mining Corp., 118 F.3d 1298,

20  1306 (9th Cir. 2004); see also W. Props. Serv. Corp. v. Shell

21  Oil Co., 358 F.3d 678, 685 ("a claim for contribution requires

22  the 'join operation' of both Sections"). Section 107 has

23  similarly been described as creating the right of contribution,

24  _____

25      ⁴ In Cooper Industries, the Court clarified that the remedies
   "are similar at a general level in that they both allow private
   parties to recoup costs from other private parties.  But the two
26  remedies are clearly distinct."  543 U.S. at 582 n.3.

9

1  whereas Section 113 is the machinery that governs and regulates

2  such actions.  Pinal Creek, 118 F.3d at 1302.  But this language

3  is not inconsistent with plaintiff's interpretation: Section 113

4  still has force in contribution actions based wholly upon

5  Section 107 because "the court may allocate response costs among

6  liable parties using such equitable factors as the court

7  determines are appropriate."  42 U.S.C. § 9613(f)(1).  This is

8  the core of the "machinery" to which Pinal Creek was referring.

9  See Aggio v. Estate of Aggio, 2005 U.S. Dist. LEXIS 37428, at

10  *15 (N.D. Cal. Sept. 19, 2005).

11      Finally, allowing PRPs to sue under Section 107 when a

12  Section 113 action is unavailable advances CERCLA's polluter-

13  pays objective.  Under defendant's interpretation, where a PRP

14  voluntarily incurs response costs, it would be barred from

15  recovering those costs from other PRPs, even if the other PRPs

16  were substantially responsible for the contamination.  This

17  result would clearly be inconsistent with CERCLA's objectives.

18  Accordingly, the court denies the motion to dismiss plaintiff's

19  second and third claims.

20  **C. Indemnity Agreement**

21      Last, defendant moves to dismiss the claim for indemnity on

22  the grounds that the Indemnity Agreement has expired.  As quoted

23  in the complaint, the Indemnity Agreement between Century 73 and

24  Lyddon provided that:

25      [Century 73] hereby agrees to indemnify Lyddon against
        and to hold Lyddon harmless from any loss, damage,
26      liability, cost or expense including attorney's fees

10

incurred as a consequence of any act or occurrence which
occurred or is alleged to have occurred with respect to
[Century 73's] obligations as landlord under the Leases
before the date hereof expect as otherwise provided in
the Agreement.

Compl. ¶ 73.  The parties agree that the "Agreement" referenced

in the last sentence of this provision is the Agreement for

Purchase and Sale dated December 19, 1985 ("Purchase

Agreement").[5]  Decl. of Scott Reisch, Ex. E.

     First, to the extent that Fox owes a duty to indemnify, it

owes that duty to Lyddon, not Seven Springs.  As noted above,

Lyddon and Seven Springs are separate legal entities.  See also

Wilshire-Dohency Associates, Ltd. v. Shapiro, 83 Cal. App. 4th

1380, 1396 (2000) ("The extent of the duty to indemnify is

determined from the contract.").  Second, the Indemnity

Agreement was incorporated into the Purchase Agreement as an

exhibit, which provided a twelve month expiration date that has

since passed:

   [T]he Seller's covenants, warranties and representations
   contained in this Agreement and in any document executed
   by Seller pursuant to the forms attached hereto as
   exhibits . . . shall survive . . . only for a period of
   twelve  months  (12)  after  the  Closing  Date  (the
   "Limitation Period").

Purchase Agreement, § 4.5.

     Plaintiff responds in two ways, neither availing.  First,

plaintiff maintains that the Purchase Agreement is extrinsic

evidence that cannot be evaluated on a motion to dismiss.  This

---

     [5] Lyddon is bound by the Purchase Agreement.  See Purchase
Agreement §§ 4.1 (binding "exchanger" to limitations section),
3.1(b)(I) (defining "exchanger" to mean Lyddon).

1  general rule is subject to an exception, however, which applies

2  when the plaintiff's claim necessarily relies on the extrinsic

3  evidence.  Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir.

4  1998).  "A court may consider evidence on which the complaint

5  'necessarily relies' if: (1) the complaint refers to the

6  document; (2) the document is central to the plaintiff's claim;

7  and (3) no party questions the authenticity of the copy attached

8  to the 12(b)(6) motion."  Marder v. Lopez, 450 F.3d 445, 448

9  (9th Cir. 2006).

10      Here, the complaint references the Indemnity Agreement,

11  which was attached to the complaint and in turn references the

12  Purchase Agreement.  Moreover, the latter document is central to

13  the plaintiff's claim (as it sets forth when the indemnity

14  agreement would expire), and its authenticity is not in

15  question.  Accordingly, it is appropriately before the court.

16      Second, defendant contends that the "except as otherwise

17  provided in the [Purchase] Agreement" provision refers to only

18  certain obligations and liabilities that were carved out of the

19  Purchase Agreement (in Section 5.5), but not the expiration

20  provision (in Section 4.5).  There is no basis for this

21  distinction.  A plain reading of the Purchase Agreement

22  indicates that any "covenants, warranties and representations"

23  in the attached forms and documents would expire in twelve

24  months.  Because this provision carried over to the Indemnity

25  Agreement, the indemnity has since expired.  Accordingly, the

26  court grants the motion to dismiss with respect to plaintiff's

1  fourth claim.

2                          **IV. Conclusion**

3        As set forth above, the motion to dismiss is granted in

4  part and denied in part.  Plaintiff is granted 20 days to file

5  an amended complaint.

6        IT IS SO ORDERED.

7        DATED:  April 26, 2007.

8

9

10                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
11                              UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                13